No. 15-2585

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

Carol Jean Oney
Plaintiff-Appellant

v.

Pennymac Mortgage Investment Trust Holdings and
Pennymac Loan Services, LLC
Defendants-Appellees

---

On Appeal from the United States District Court for the District of Maryland
No. 15-01525

---

## BRIEF OF APPELLANT

---

APRIL T. ADEMILUYI
Law Office of April T. Ademiluyi
10411 Motor City Dr Ste 750
Bethesda, MD 20817
lawofficeata@gmail.com
ECF@lawofficeata.com
443-393-3984

Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... 3

JURISDICTIONAL STATEMENT ............................................................................. 8

STATEMENT OF THE ISSUES ................................................................................. 8

STATEMENT OF THE CASE .................................................................................... 8

   The necessary change in class counsel............................................................. 10

   Procedural posture of the second filed action.................................................. 11

SUMMARY OF THE ARGUMENT ......................................................................... 13

ARGUMENT ............................................................................................................. 14

   Standard of Review .......................................................................................... 14

   ONEY AND CLASS FDCPA CLAIM ............................................................ 18

     The law of the case estops Pmac from arguing it did not violate FDCPA. .................................. 18

      Pennymac engaged in collection activity ...................................... 20

      Pennymac is a debt collector ......................................................... 21

      Pennymac engaged in an act or omission prohibited by the FDCPA .................................... 29

     Collateral estoppel also forecloses Holdings' new arguments concerning MCALA. ................... 31

     Pennymac cannot raise any reasonable arguments that would create immunity from MCALA. ..................................................................................... 33

     The complaint adequately pleads Pennymac is a debt collector.................... 34

     There is no basis to strike any allegations in the complaint........................ 37

   ONEY'S INDIVIDUAL CLAIMS .................................................................... 38

     COUNT II ONEY'S INDIVIDUAL FDCPA CLAIM ................................ 38

      Collection Activity........................................................................ 38

      Pennymac and its Servicer are debt collectors............................. 40

      Pennymac and its servicer engaged in acts prohibited by FDCPA. ......................... 40

     COUNT III MCPA ...................................................................................... 42

      The facts establish Defendant's misrepresentation and omissions violate MCPA................... 42

      Ms. Oney has adequately plead damages under MCPA ............................ 45

   PREEMPTIVE STRIKE AGAINST CLASS CERTIFICATION ..................... 46

   RELIEF REQUESTED .................................................................................... 53

**CERTIFICATE OF COMPLIANCE**................................................................................54

# TABLE OF AUTHORITIES
## Cases

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)…18

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974)…………………….....38

*Baltimore County v. Cigna Healthcare,* 238 Fed.Appx. 914, 921 (4th Cir.2007)..17

*Allen v. Bank of Am., N.A,* 933 F. Supp. 2d 716, 729 (D. Md. 2013)……………..24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………..15

*Bradford v. HSBC Mortgage Corp.,* 829 F.Supp.2d 340, 348 (E.D.Va.2011)…..21

*Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir.2012)……….22

*Califano v. Yamasaki,* 442 U.S. 682, 703 (1979)………………………………18

*Crissen v. Gupta,* No. 2:12-CV-00355-JMS, 2014 WL 4129586, at *10 (S.D. Ind. Aug. 19, 2014)………………………………………………………………….50

*Davidson v. Capital One Bank (USA), N.A.,* No. 14-14200, 2015 WL 4994733, at *5 (11th Cir. Aug. 21, 2015)…………………………………………………….27

*Durham v. Somerset Cnty., Md*., No. CIV. JKB-12-2757, 2013 WL 5962958, at *1 (D. Md. Nov. 6, 2013)……………………………………………………………18

*Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)………………16

*Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472 (4th Cir. 1991)……………………………………………………………………………….19

*F.T.C. Check Investors, Inc.,* 502 F.3d 159, 173 (3d Cir.2007)…………………21

*Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)…………………………………42

*Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008)…………………………16

*Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003)………...18

*Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir.2010)………….39

*Green v. H & R Block, Inc.,* 355 Md. 488, 524, 735 A.2d 1039, 1059 (1999)……43

*Green v. Wells Fargo Bank, N.A,* 927 F. Supp. 2d 244, 253-55 (D. Md. 2013) *aff'd,* 582 F. App'x 246 (4th Cir. 2014)………………………………………………45

*Goss,* 917 F.Supp.2d at 450, 2013 WL 105326, at *3……………………………45

*Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 319 (1977)………………..12

*Henson v. Santander Consumer USA, Inc* No. CIV.A. RDB-12-3519, 2014 WL 1806915, at *5 (D. Md. May 6, 2014)…………………………………20,23,28,53

*In re Microsoft Corp. Antitrust Litig.,* 355 F.3d 322, 328 (4th Cir. 2004)………20

*In re TMST, Inc.,* No. 09-17787-DK, 2014 WL 6390312, at *1 (Bankr. D. Md. Nov. 14, 2014)………………………………………………………………………19

*Johnson v. Zimmer,* 686 F.3d 224, 235 (4th Cir.2012))…………………………48

*Lembach v. Bierman,* 528 Fed.Appx. 297, 303 (4th Cir.2013)…………………..41

*Lewis v. Ford Motor Co.,* 263 F.R.D. 252, 266 (W.D. Pa. 2009)………………..4

*Lloyd v. General Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257 (2007)……….45

*Luskin's, Inc. v. Consumer Protection Div.,* 353 Md. 335, 356–57, 726 A.2d 702, 712 (1999)…………………………………………………………………………43

*Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452, 468 (D. Md. 2013)……………………………………………………………………………..46

*Maryland Nat. Bank v. Gellman,* No. CIV. A. HAR-85-623, 1991 WL 111481, at *2 (D. Md. June 18, 1991)……………………………………………………………31

*Montana v. United States,* 440 U.S. 147, 153 (1979)……………………………31

*Moore v. Lightstorm Entm't,* No. CIV.A. RWT-11-3644, 2013 WL 4052813, at *4 (D. Md. Aug. 9, 2013)…………………………………………………………….19

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)………………………………………………….18

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)……………………………………………………………………..15

*Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975)…………………..49

*Padgett v. OneWest Bank, FSB* No. CIV.A. 3:10-CV-08, 2010 WL 1539839, at *15 (N.D.W. Va. Apr. 19, 2010)…………………………………………..24,27

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979)…………………………31,32

*Piotrowski v. Wells Fargo Bank, N.A.,* No. CIV.A. DKC 11-3758, 2013 WL 247549, at *12 (D. Md. Jan. 22, 2013)…………………………………………..46

*Polk v. Montgomery Cnty., Md.,* 782 F.2d 1196, 1201-02 (4th Cir. 1986)………32

*Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 123-24………….39,41

*Sager v. Hous. Comm'n of Anne Arundel Cnty.,* 855 F. Supp. 2d 524, 548-49 (D. Md. 2012)…………………………………………………………………..43,46

*Schlegel v. Wells Fargo Bank, N.A.,* 799 F. Supp. 2d 1100, 1102 (N.D. Cal. 2011) *aff'd in part, rev'd in part and remanded sub nom. Schlegel v. Wells Fargo Bank, NA,* 720 F.3d 1204 (9th Cir. 2013)…………………………………………27

*Stitt v. San Francisco Mun. Transp. Agency,* No. 12-CV-3704 YGR, 2014 WL 1760623, at *7 (N.D. Cal. May 2, 2014)…………………………………..50

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357-358 (1978)……………51

*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476

(D.Md.2009)……………………………………………………………….17

*Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir.1994)…………………………………..31

*Roman v. ESB, Inc.,* 550 F.2d 1343, 1348–49 (4th Cir.1976)…………………..18

*Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 394–95 (4th

Cir.2014)…………………………………………………………………………….26,41

*Salvato v. Ocwen Loan Servicing, LLC* No. 12-CV-0088 JLS POR, 2012 WL
3018051, at *1 (S.D. Cal. July 24, 2012)………………………………………..24

*Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)………………………………………16

*Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 538 (7th Cir.2003)…21,22,25

*Sedlack v. Braswell Servs. Grp., Inc.,* 134 F.3d 219, 224 (4th Cir. 1998)………..31

*Sejman v. Warner–Lambert Co., Inc.,* 845 F.2d 66, 69 (4th Cir.1988)………….18

*Skipper v. Giant Food Inc.,* 68 F. App'x 393, 396 (4th Cir. 2003)…………….18,51

*United States v. Mendoza,* 464 U.S. 154, 159 n. 4. (1984)……………………….31

*United States v. Wight,* 839 F.2d 193, 196 (4th Cir.1987)………………………..32

*Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)……………………………16

*Warren v. Sessoms & Rogers,* P.A., 676 F.3d 365, 374 (4th Cir.2012)……….41

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)….37

*Williams v. Equity Holding Corp.,* 498 F. Supp. 2d 831, 840,842 (E.D. Va.

2007)………………………………………………………………………………….17

*Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir.1986)…………………………..17

## Statutes and Rules

28 USC§ 1291……………………………………………………………………..8

Rule 4(a)(1)(A)…………………………………………………………………8

Fed.R.Civ.P.12(b)(6)……………………………………………………12,13,15

Fed.R.Civ.P.8(a)(2)……………………………………………………………16,17

Fed.R.Civ.P. 9(b))……………………………………………………………..16,17

Fed.R.Civ.P.8(d)(1)…………………………………………………………16

Fed.R.Civ.P Rule 12(f)………………………………………………………37

15 U.S.C. § 1692a(4)………………………………………………………..20,21

15 U.S.C. § 1692a(6)………………………………………………………20,26

15USC§ 1692(a)(6)(F)(iii)…………………………………………………..22

15USC§ 1692e……………………………………………………………30,41

Md. Code Ann., Corps. & Ass'ns § 4A-1009…………………………………34

Md.Code Ann., Com. Law §§ 13–101 *et seq*………………………………45

Md. Code Ann., Bus. Reg., § 7-101, *et seq*…………………………………9

Maryland District Court Local Rule 103(1)(b)………………………………13

15 USC §1692

## Legislative Materials and Treatise

S. REP. 95-382, *2, 1977 U.S.C.C.A.N. 1695, 1696…………………………26

5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed.1990)…………………………………………………37

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal under 28 USC§ 1291.  This appeal is timely filed as the notice of appeal was filed December 18, 2015 and the final order was entered on December 17, 2015. Rule 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1. Did the District Court err in ruling that Pennymac, an entity that specializes and focuses solely on purchasing debts because of their default status is not a debt collector, as defined by the Fair Debt Collection Practices Act, because they offer loan modifications to collect on the debt and they own debt?

2. Did the District Court err in ruling that counsel of record was not adequate to represent the class?

3. Did the District Court err in finding that the complaint did not state a plausible claim that Pennymac and Pennymac Services sent false and misleading advertisements in an attempt to collect a debt in violation of Fair Debt Collection Practices Act and the Maryland Consumer Protection Act?

## STATEMENT OF THE CASE

This is a consumer protection lawsuit.  The case evolves from collection activities, both direct and indirect, by PennyMac to collect residential mortgage

debts, acquired solely for their default status, for the benefits of others in the State of Maryland. Pennymac does not have any employees and is externally managed by PNMAC Capital Management, LLC. Through its affiliate loan servicer, Pennymac Loan Services, LLC,("Pennymac Services") its collection activities include collecting principal, interest and escrow account payments, if any, with respect to mortgage loans, as well as managing loss mitigation, which may include, among other things, loan workouts, modifications and refinancings, foreclosures, short sales, sales of REO. While Pennymac engaged in its collection activities it failed to first obtain a collection agency license (or any other license) as required by the Maryland Collection Agency Licensing Act ("MCALA") Md. Code Ann., Bus. Reg., § 7-101, *et seq*, which is a material violation of the Fair Debt Collection Practices Act.

This is the second filed putative class action. As a result of the first action, filed March 10, 2012, Pennymac acquired licensing from the Maryland Department of Labor, Licensing, and Regulation on August 9, 2012. In the first filed action, this Court denied defendant's motion to dismiss the Plaintiff's claim under the FDCPA, in a published decision. JA 54 The first filed class action suit was disposed of on summary judgment because the class representative entered into a forbearance agreement curing the default of her loan immediately prior to Pennymac's acquisition of the loan. JA152 The disposition of the first filed action excluded the

first named plaintiff from the class but holds that Pennymac did violate FDCPA with respect to all loans it purchased while in default. *Id.*

The new Plaintiff, Ms. Oney, realleges, for herself and all others similarly situated, that PennyMac's collection activities violate the remedial Fair Debt Collection Practices Act ("FDCPA"). Ms. Oney seeks statutory damages on behalf of herself and a class to be determined by the Court pursuant to the FDCPA.

### The necessary change in class counsel.

Pennymac is in great fear of settlement and a judgment in this case thus the case has unnecessarily dragged out too long. With motions to certify the class and summary judgment fully briefed and pending in June 2014, Pennymac desperately began to unlawfully place pressure on the first named plaintiff, Ms. Ademiluyi, in July 2014, during the Prince Georges County Circuit Court foreclosure mediation, to withdraw the federal district court class action suit. During the foreclosure mediation, Pennymac's Executive expressed her outright anger out Ms. Ademiluyi for commencing this suit and she made it clear she would not modify her mortgage loan because she did so.

As a result of the Pennymac acting on their illegal threats of retaliation, Ms. Ademiluyi and her attorney began having irreconcilable differences and she had to seek the assistance of her daughter, who was the first attorney to represent her in her

claims against Pmac.  Pmac set the foreclosure sale date of Ms. Ademiluyi's home for October 15, 2014.  On October 2, 2014, Ms. Ademiluyi's daughter and attorney entered an appearance on her behalf and the District Court subsequently granted her previous counsel's motion to withdraw.  Ms. Ademiluyi requested the District Court appoint counsel to represent the class or in the alternative time to secure replacement class counsel because of her familial relationship with counsel of record may create difficulties with certifying the class.

Because Ms. Ademiluyi could not secure a replacement counsel, Ms. Ademiluyi's attorney and daughter sought appointment as class counsel but that request was denied on February 10, 2015.  On February 24, 2015, the district court ordered the Legg Law Firm to apprise the Court as to whether they are amenable to rehire.  On March 10, 2015, the Legg Law Firm advised the district court that they filed a proof of claim seeking payment for their attorney fees in Ms. Ademiluyi's bankruptcy case and they believe it creates a conflict of interest with continued representation of Ms. Ademiluyi in the class action suit.

### Procedural posture of the second filed action.

Pmac made a preemptive strike against class certification and primarily revives the arguments already disposed of in the first filed action and in response, Ms. Oney moved for class certification and summary judgment.  Judge Hollander

11

denies the motions without prejudice to refile after disposition of the 12(b)(6) motion and discovery. JA186  Based upon the discovery that has been exchanged by the parties, in the first filed action, summary judgment was supported by the undisputed material facts.  PennyMac has performed collection activities in the state to which it did not have the right to do.  Judgment would have brought an end years of litigation that has reached its expiration and resolved legal issues relevant to other pending actions.[1]  Upon denial of summary judgment and class certification without prejudice, Ms. Oney requested that the Court immediately apprise her of whether the Court takes issues with her counsel, so that she can seek new counsel.

The case was reassigned to Judge Motz, whose orders have been unclear or inconsistent with Judge Hollander's determination of the issues.  Shortly after the denial of summary judgment and class certification without prejudice, Judge Hollander requested the clerk reassign the case.  According to Judge Motz, Judge Hollander was too overwhelmed in her case load to dispose of this case. JA 187  To maintain consistency in legal determinations against a party and preserve the resources of the judiciary, Local Rule 103(1)(b), requires actions with identical facts and legal issues to be decided by the same the Judge.  Judge Motz granted

---

[1] "It is always possible to imagine more evidence which could have been offered, but at some point litigation must come to an end." *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 319 (1977).

Pennymac's 12(b)(6) motion but gave Ms. Oney leave to amend to state "specific facts": 1)"that support the conclusory averment that PennyMac made collection efforts against her prior to being licensed"; 2)"status of the loan at the time it was purchased by Pennymac"; and 3) "showing that circumstances had changed between the time of the issuance of Judge Hollander's ruling in 12-752 that plaintiff's counsel is inadequate to represent the class." JA 187  Ms. Oney attempted to amend her pleadings but both parties were confused with Judge Motz's instructions.  The facts pertaining to unlicensed debt collection were undisputed and plead verbatim from the complaint in the first filed action.  Pennymac revived their motion to dismiss and Ms. Oney requested clarification.  Judge Motz denied clarification but ordered Ms. Oney to respond to the renewed motion to dismiss.  Judge Motz subsequently dismisses this case with prejudice because "proof is in the pudding"; Ms. Oney was offered a loan modification and foreclosure proceedings were initiated after Pennymac became licensed; and plaintiff's counsel has not followed the court's instructions of pleading facts that show circumstances have changed that prevented her from representing the class. JA 247-248

## SUMMARY OF THE ARGUMENT

This is a consumer protection class action suit. Pennymac is an entity established solely for purposes of purchasing defaulted mortgage debts to collect upon for a profit. Pennymac failed to adhere to licensing laws to conduct their business activities in Maryland, which is a violation of the Fair Debt Collection Practices Act. Pennymac and its loan servicer, Pennymac Services, continue to violate FDCPA through sending misleading letters to homeowners about their loss mitigation options to avoid foreclosure. Pennymac has needlessly prolonged this case through advancing the nonsensical argument that it is not a debt collector as defined by FDCPA but rather a loan servicer that owns the debt. An entity can be both a loan servicer and a debt collector under FDCPA. Pennymac is a debt collector. Pennymac hires its affiliate, Pennymac Services, to facilitate collection of the debts it purchases. Pennymac Services is a loan servicer and a debt collector.

The instant case is counsel of record's first putative class action suit; she has been the sole and lead counsel on this case for over a year; she has full knowledge of the applicable law; and she is more than adequate to represent the class.


**ARGUMENT**

**Standard of Review**

This Court will review *de novo* the District Court's ruling on the 12(b)(6) motion. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

For a complaint to survive an attack by a 12(b)(6) motion, it must "requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)(citing Rule 8(a)). The complaint need not be detailed but requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-556 (2007)(citations omitted). "This Court must assume all [well-pled facts] to be true and draw all reasonable inferences in favor of the plaintiff. This Court, however, 'need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments.'" *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008) (citations omitted).

Plaintiff can move forward with a well pleaded complaint even if it appears "that a recovery is very remote and unlikely" *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court must accept "all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). However, the Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Pleadings are generally required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P.8(a)(2). In addition each allegation must be "simple, concise and direct." FRCP 8(d)(1). However, when asserting claims based in fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Conversely, statutory consumer protection claims, based on non-fraudulent but unfair or deceptive conduct, are not required to be pled with particularity. The District of Maryland explained the limits of the requirement to plead with particularity in the context of remedial, consumer protection statutes (similar to those in this matter) as follows:

> [Defendants] are simply mistaken that Rule 9(b)'s requirement of particularity applies to the other elements of the [*Racketeer Influenced and Corrupt Organizations* Act] claims (e.g. existence of a conspiracy) *in addition to* the predicate acts of mail and/or wire fraud. *Williams,* 498 F.Supp.2d at 842. For the remaining RICO elements and *the remaining non-RICO claims, Plaintiffs' allegations are construed under the more liberal pleading standard of a "short and plain statement of the claim showing that the pleader is entitled to relief."* Fed.R.Civ.P. 8(a)(2); *see also Baltimore County v. Cigna Healthcare,* 238 Fed.Appx. 914, 921 (4th Cir.2007) (holding that the "notice pleading" standard of Fed.R.Civ.P. 8 applies to allegations of non-fraudulent conduct and thus plaintiff's claim of negligent misrepresentation did not need to be pleaded with particularity under Fed.R.Civ.P. 9(b)). Because the remaining claims in Plaintiffs' complaint do not allege fraudulent conduct (rather, they consist of the other elements of the RICO claims in addition to claims under [Real Estate Settlement Procedures Act], [Protection of Homeowners in Foreclosure Act], and a gross negligence claim), the lower pleading standard applies.

*Proctor v. Metropolitan Money Store Corp.,* 645 F.Supp.2d 464, 476 (D.Md.,2009) (emphasis added)(internal citations omitted).

With respect to the district court's decision to deny class certification, this Court applies a deferential standard of review. District courts retain "broad discretion in deciding whether to allow the maintenance of a class action." *Zimmerman v. Bell,* 800 F.2d 386, 389 (4th Cir.1986) (quoting *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348–49 (4th Cir.1976)). The district court's decision to deny class certification reviewed only for an abuse of discretion. *Califano v. Yamasaki,* 442 U.S. 682, 703 (1979); *Skipper v. Giant Food Inc.,* 68 F. App'x 393, 396 (4th Cir.

2003). Of course, this "discretion must be exercised within the framework of Rule 23." *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003)(internal citations omitted).

## ONEY AND CLASS FDCPA CLAIM
### The law of the case estops Pmac from arguing it did not violate FDCPA.

> [A] district court retains the power to reconsider and modify its interlocutory judgments….Said power is committed to the discretion of the district court, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"), and doctrines such as law of the case, which is what the district court apparently relied on in this case, have evolved as a means of guiding that discretion, *see Sejman v. Warner–Lambert Co., Inc.,* 845 F.2d 66, 69 (4th Cir.1988) (noting that earlier decisions of a court become law of the case and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." (internal quotation marks omitted)).

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *See also Durham v. Somerset Cnty., Md*., No. CIV. JKB-12-2757, 2013 WL 5962958, at *1 (D. Md. Nov. 6, 2013)("Such grounds would allow a motion for reconsideration to perform a valuable function by permitting a court to prevent manifest injustice without the need for appeal"). Furthermore, an interlocutory order can be reviewed by the district court, on motion or *sua sponte,* at any time prior to the entry of a final

judgment. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1472

(4th Cir. 1991); *See also In re TMST, Inc.,* No. 09-17787-DK, 2014 WL 6390312,

at *1 (Bankr. D. Md. Nov. 14, 2014)( "although not obliged to do so, the court retains

the right to review its own interlocutory orders *sua sponte* or upon motion"); *Moore*

*v. Lightstorm Entm't*, No. CIV.A. RWT-11-3644, 2013 WL 4052813, at *4 (D. Md.

Aug. 9, 2013)( relying upon *Fayetteville Investors* and stating in dicta when it would

be appropriate for the Court to s*ua sponte* reconsider its order).

The district court's opinion was thorough and clearly established that Pmac

violated FDCPA with respect to all loans it purchased in default without a license to

collect.  First the district court established all the elements necessary to prove a claim

under FDCPA: (1) the plaintiff has been the object of collection activity arising from

consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and

(3) the defendant has engaged in an act or omission prohibited by the FDCPA."

JA135  This Court acknowledged the dispute between the parties lies in the second

element and summarized the contentions in pertinent part:

> First, PennyMac argues it is not a "debt collector" under the Act
> because it owned plaintiff's debt and was therefore not collecting a debt
> "for another," as required by the plain text of the statute. ECF 69–1 at
> 22–24 (citing, *e.g.,* 15 U.S.C. § 1692a(4)). Second, even it if it was
> collecting a debt "for another," PennyMac argues that it did not acquire
> the debt "solely for the purpose of collection," as demonstrated by, for
> example, its efforts to modify Ademiluyi's loan before ultimately
> seeking foreclosure. *Id.* at 24–29 (citing, *e.g.,* 15 U.S.C. § 1692a(4)).

Finally, PennyMac argues that Ademiluyi's "loan was not in default at the time [PennyMac] acquired it, and therefore [PennyMac] is a creditor, not a debt collector under the FDCPA." *Id.* at 29–34 (citing, *e.g.,* "15 U.S.C. § 1692a(6) (providing that entities that purchase debts that are **not** in default at the date of acquisition are creditors)") (emphasis in Defendant's Memo).[16]

JA 144  Because Ademiluyi's loan was not default at the time Pennymac acquired

the loan, it was not "necessary and critical" for the Court to reach a final conclusion

on Pennymac's first two arguments but the Court cites to authority that addresses

those arguments. *Id; See In re Microsoft Corp. Antitrust Litig.,* 355 F.3d 322, 328

(4th Cir. 2004). Moreover, based upon the undisputed facts of this case, even if law

of the case or collateral estoppel does not apply, as argued *infra* Pennymac's

arguments that they are not debt collectors as defined by FDCPA are unreasonable.[2]

## Pennymac engaged in collection activity

Relying on *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 538 (7th

Cir.2003), the first element of violating the FDCPA is straight forward. A person is

---

[2] On December 9, 2015, this Court heard the oral arguments of *Henson v Santander* 15-1187, where Judge Niemeyer specifically stated that at least all courts agrees that if your business is primarily focused on purchasing defaulted debts to collect, the entity is a debt collector. Pennymac yet still argues, relying on cases where the entities at issue are banks and lenders, they are not debt collectors as defined by FDCPA because they offer loan modifications and purchased the debts. This Court understood that the *Henson* opinion must be carefully crafted to address a convoluted statute and confusing case law.

the object of collection activity if "an entity [is] receiving or attempting to collect money due on a debt." JA136   The district court further explains relying on *Schlosser; F.T.C. Check Investors, Inc.,* 502 F.3d 159, 173 (3d Cir.2007); *Bradford v. HSBC Mortgage Corp.,* 829 F.Supp.2d 340, 348 (E.D.Va.2011) and many other cases that under FDCPA, a person is subjected to collection activity by either a debt collector or creditor, which are mutually exclusive categories. JA137.

## Pennymac is a debt collector

For some, the plain reading of the FDCPA seems unnecessarily convoluted and not helpful in the next step of differentiating between the "debt collector" and the "creditor"; however, the district court's guidance in making the determination is unambiguous and simplifies the inquiry.  If the entity that originated the debt is collecting money due on a debt, then that entity is simply a creditor not subject to FDCPA. JA 136  On the other hand, if the entity did not originate the debt at issue, then the purpose of assigning the debt to that entity dictates whether it is debt collector as oppose to stepping into the shoes of a creditor. JA 137-JA139  The district court explains that § 1692a(4) excludes from the definition of a creditor assignment or transfers "*solely for the purpose of facilitating collection*" and § 1692(a)(6)(F)(iii) excludes from the definition of a debt collector a debt that was not in default at the time of the transfer or assignment. *Id*  In other words, if person or

entity acquired the loan solely because it was in default to collect that past due balance, then they are debt collectors. The district court acknowledges and quotes the Sixth Circuit's general rule in *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir.2012) that it can be presumed that if an entity acquires ownership of a loan or a loan servicer acquires servicing rights on a loan while it is in default, they meet the statutory definition of a debt collector. *Id. (*citing *Schlosser,* 323 F.3d at 536 and Plaintiff's Memo, ECF 62–1 at 12–13 (quoting *Ruth,* 577 F.3d at 796)). The district court cautions, however, that this presumption must be rebuttable because if one does not carefully look to purpose of why the debt was assigned or transferred such a presumption could lead to "*absurd* results." Id at 11-12.(Emphasis Added)  In other words, even if the entity did not originate the loan but acquires ownership of the loan while in default, that entity could, depending on why it was assigned the debt, step into the shoes of creditor as defined by FDCPA and the same holds true for the loan servicer. *Id.*  This part of the district court's analysis answered the parties' questions on whether it was necessary for Pennymac to collect money due on debt they *do not own* to meet the definition of a debt collector under FDCPA.

Finally, the district court thoroughly addresses how to dispose of Pennymac's argument that they acquired the debt for purpose of servicing rather than solely for facilitating collection of a debt.  The district court explains that if the debt was assigned or transferred to an entity or loan servicer solely because of its default status

in order to facilitate collection of those past due payments, then the entity or loan servicer meets the statutory definition of debt collector.  JA 139

First the district court cites to *Henson v. Santander Consumer USA, Inc[3].*, where Santander is an entity that originates loans and services loans. No. CIV.A. RDB-12-3519, 2014 WL 1806915, at *5 (D. Md. May 6, 2014) *reconsideration denied*, No. CIV.A. RDB-12-3519, 2015 WL 433475 (D. Md. Feb. 2, 2015). Servicing a loan simply means facilitating the collection of the payments on the loans thus an entity can be both a loan servicer and a debt collector as defined by FDCPA.  In *Henson*, Santander acquired loans in default that were originated by Citi Auto Financial.  Because generally loan servicers acquire debt for purposes of collecting payments regardless of the debts' default status they are deemed to step into the shoes of a creditor under FDCPA.  The district court held the plaintiffs failed to thoroughly plead that Santander acquired or serviced those defaulted loans solely because they were in default and to collect that past due balance, which would mean that they are "improperly masquerading" as a creditor to prevent FDCPA liability.

Second, the district court cites to *Allen v. Bank of Am., N.A*, where Bank of America is a loan servicer that facilitates the collection of debts regardless of their default status. 933 F. Supp. 2d 716, 729 (D. Md. 2013).  Because Bank of America

---

[3] This case is currently pending before this Court. Case No:15-1187 Oral arguments were heard in Richmond on Wednesday December 9, 2015.  A motion to expedite this appeal because *Henson* addresses issues relevant to the disposition of this appeal was filed on February 5, 2016.

23

loan servicing does not purposely seek out collecting payment on debts only in default, they were shielded from FDCPA liability.

> However, this court agrees with the *Padgett* court's analysis of a similar claim that BANA is more properly characterized as a "creditor" under the Act because it "stepped into the shoes" of GreenPoint when it began servicing the Allens' mortgage; it did not acquire the mortgage primarily to collect any amount that may have been in default. *See Padgett,* 2010 WL 1539839 at *15 (quotation omitted). Accordingly, BANA is entitled to summary judgment on the Allens' FDCPA claim.

*Id* at 729.

Next, the district court cites to *Salvato v. Ocwen Loan Servicing, LLC,* where Plaintiff's defaulted on HAMP loan modification of their primary residence. No. 12-CV-0088 JLS POR, 2012 WL 3018051, at *1 (S.D. Cal. July 24, 2012)). The loan was owned by Mellon Bank and the servicing rights was transferred from Saxon to Ocwen. It appeared that the servicing rights were transferred to Ocwen solely because the Plaintiff's defaulted on the loan modification. Ocwen sought to collect payment on past due mortgage payments as well double collect past due fees that were rolled into the new principle balance as part of the loan modification agreement.

> Examining this dichotomy further, an entity attempting to collect a debt that did not originate with that entity could fall into either category. *Schlosser,* 323 F.3d at 536. The deciding factor revolves around how the collection entity behaves with respect to that debt. …This distinction is important because the FDCPA is aimed at those who may have "*no future contact with the consumer and often are unconcerned with the consumer's opinion of them.*" S. Rep. 95–382, at 2.

24

*Id* at *5 Emphasis Added).

In the first filed action, Pennymac and the authorities which it relies upon take the "no future contact…" quote of the legislative history of FDCPA out of context. The entire paragraph surrounding this statement, pertaining to the need for FDCPA, properly puts this statement into perspective:

> Hearings before the Consumer Affairs Subcommittee revealed that independent debt collectors are the prime source of egregious collection practices. While unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial. Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them. *Collection agencies generally operate on a 50-percent commission, and this has too often created the incentive to collect by any means.*

S. REP. 95-382, *2, 1977 U.S.C.C.A.N. 1695, 1696 (Emphasis Added).  Put another way, the entity that originates the debt may very well become abusive in seeking to collect past due payments; however, the debt collector has a stronger incentive to abuse the debtor to collect because if they do not collect the past due balance, they will never realize income from the debt.  Pennymac's argument that because they offered a very small number of a class members loan modifications they are not debt collectors defies common sense and it is directly contrary to the purpose of FDCPA. Pennymac sought out Plaintiff's and class members' loans specifically because they

were in default and does not receive income unless they collect through a loan modification, bankruptcy, short sale, REO sale from foreclosure or deed in lieu, or civil litigation of the deficiency balance of a foreclosure. JA196 SAC ¶26; JA 167 FAC ¶33; JA 54  Pennymac is in a much worse predicament than "50 percent commission" if they fail to collect on the debt because it has incurred additional expenses to purchase the defaulted mortgages.  Therefore, Pennymac has a strong motive to become abusive to collect money from class members to satisfy their defaulted debts, which is precisely the crux of this suit.

Some Courts construe the creditor exception in § 1692a (4) and the debt collector definition § 1692a(6) require that debt collection be on behalf of others; FDCPA, however is remedial statute that is to be given a liberal interpretation in favor of the debtor. JA 135(citing to *See, e.g., Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 393 (4th Cir.2014).  Because rather than engaging in a commission arrangement, debt collectors, such as Pennymac, make agreements to purchase the debts for pennies on the dollar to acquire greater revenues from collecting payments, requiring that the collection be for others would be contrary to the intent of FDCPA.  As discussed *supra*, it is not necessary that the entity collect payments on a debt it does not own to be subjected to FDCPA liability.

Finally the district court cites to *Padgett v. OneWest Bank, FSB,* where it would be absurd to presume an entity is a debt collector simply because they

acquired a loan in default. No. CIV.A. 3:10-CV-08, 2010 WL 1539839, at *15 (N.D.W. Va. Apr. 19, 2010). In *Padgett*, Indymac Bank went into FDIC receivership where all of its assets were auctioned. One West Bank purchased all of Indymac's assets, some of which happen to be in default. Therefore, the Court could not conclude OneWest acquired Plaintiff's defaulted mortgage, initially owned by Indymac, solely because it was in default and to collect on those past due payments. *Id.*

Pennymac again(as they did in the first filed action) relies on *Schlegel v. Wells Fargo Bank, N.A.,* 799 F. Supp. 2d 1100, 1102 (N.D. Cal. 2011) *aff'd in part, rev'd in part and remanded sub nom. Schlegel v. Wells Fargo Bank, NA,* 720 F.3d 1204 (9th Cir. 2013) and now *Davidson v. Capital One Bank (USA), N.A.,* No. 14-14200, 2015 WL 4994733, at *5 (11th Cir. Aug. 21, 2015) perhaps to emphasize that they believe this Court's final disposition of the prior action is wrong and they must be collecting "for another" to meet the definition of a debt collector under FDCPA. Unlike the instant case, those cases involve banks or lenders that originate and service their own loans; service loans they do not own; and purchased defaulted loans. The banks or lenders were sued under FDCPA and plaintiffs failed to plead the assignee exception under § 1692a (4) thus the Court's focus is on § 1692a (6). Judge Bennet, stating dicta, has addressed this issue, in *Henson v. Santander Consumer USA, Inc.,* No. CIV.A. RDB-12-3519, 2014 WL 1806915, at *5 (D. Md.

27

May 6, 2014) to explain the assignee exception under § 1692a (4), which also contains the "for another" language, is the proper mechanism to plead liability under FDCPA with respect to banks and lenders.  As argued *supra*, the district court, aligned with Judge Bennet and other district and Circuit Courts concluded it is not necessary to collect debts "for another" to be subjected to FDCPA.  Furthermore, the problem with applying FDCPA to the banks and the lenders is that it is not always apparent that they specifically sought out and purchased the loans because of their default status.

It is undisputed that Pennymac specializes in the purchasing and collection of defaulted mortgage loans and this is their sole business activity. JA76,121, 161 FAC ¶13; 191 SAC ¶13    Ms. Oney's loan, like the class members, was acquired by Pennymac solely because it was in default and Pennymac cannot dispute that the Oney Loan was acquired in default or the purpose of acquiring her loan.  Pennymac proceeded to collect on Ms. Oney's loan directly through sending a notice of intent to foreclose and indirectly, with the aid of a loan servicing company, through sending various communication letters advising Ms. Oney and the class members of the options to avoid foreclosure. JA218-243  Pennymac's arguments that offering loan modifications exempt them from liability under FDCPA is nonsensical. It is immaterial how the debt collector chooses to accept payment for the debt.  FDCPA

is designed to police the manner in which the debt collector acts to acquire payment on the debt.

Pennymac position as to why the law of the case does not apply or the arguments as a whole is a dilatory tactic to delay the inevitable. Pennymac argues the law of the case does not apply because this is a different case but the first case was refiled with a different named plaintiff that was identified to the court as a class member in the first action. Pennymac further ridiculously argues that Judge Hollander's lengthy opinion discussing whether they qualify as debt collectors JA134-139 left open the question as to whether they qualify as debt collectors. JA134-139 Until this court affirms a final judgment in favor of the Ms. Oney and the class, Pennymac will continue to raise the same arguments rejected below and by this Court.

### Pennymac engaged in an act or omission prohibited by the FDCPA

The district court's opinion addressing Pennymac's Motion to Dismiss in the first filed action holds that Pennymac has engaged in an act or omission prohibited by the FDCPA through failure to comply with MCALA's licensing requirement. The district court first explains that Pennymac must hold a license pursuant to MCALA when it engages in mortgage foreclosure activity and when it retains third parties to service debt it purchases in default. JA98

The district court concluded that Pennymac's failure to comply with MCALA while it sends class members Notice of Intent to Foreclose (NOI) and retains servicers to collect payments through various means is a material violation of FDCPA.  The district court articulated that the contents of the NOI demonstrate Pennymac's direct collection activity that is "a threat to take an action that cannot legally be taken," in violation of 15 U.S.C. § 1692e(5), and "unfair or unconscionable means" of collecting a debt, in violation of 15 U.S.C. § 1692f. Similarly, the defendants indirectly engaged the same prohibited conduct through Pennymac's Servicing "perform[ing] the day-to-day activities of loan administration, processing of payments, providing customer service and workout and loan resolution support for troubled borrowers, implementing modification efforts, notifying borrowers of accounts payable, initiating and monitoring foreclosure efforts, and managing REO sales, among other activities." JA54 (holding "Defendants fare no better in connection with alleged indirect debt collection activities").

In the first filed action, the Court was apprised through the affidavit of Jesse Iliff that the collection letters, from Pennymac Loan Servicing was identical for all borrowers. JA218  Pennymac sent Ms. Oney a NOI on March 7, 2012 and through Pennymac Loan Servicing sent various communications advising her that her loan

was past due and her options to avoid foreclosure during the putative class period

while they lacked mandatory licensing.  JA169 FAC ¶ 40; JA198-199 SAC¶37-38

### Collateral estoppel also forecloses Holdings' new arguments concerning MCALA.

Collateral estoppel can be asserted offensively or defensively to foreclose the

relitigation of issues of law and fact that have been necessarily decided in prior

litigation, where the party against whom it is asserted has had a full and fair

opportunity to litigate the issues in a prior action.  *Sedlack v. Braswell Servs. Grp.,*

*Inc.,* 134 F.3d 219, 224 (4th Cir. 1998)( citing *Ramsay v. INS,* 14 F.3d 206, 210 (4th

Cir.1994)); *Maryland Nat. Bank v. Gellman*, No. CIV. A. HAR-85-623, 1991 WL

111481, at *2 (D. Md. June 18, 1991)(citing *United States v. Mendoza,* 464 U.S.

154, 159 n. 4. (1984); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979).  Even if

the second action substantially differs from the first action, collateral estoppel will

still apply. *Montana v. United States,* 440 U.S. 147, 153 (1979) ("Under collateral

estoppel, once an issue is actually and necessarily determined by a court of

competent jurisdiction, that determination is conclusive in subsequent suits based on

a different cause of action involving a party to the prior litigation." (citing *Parklane*

*Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, (1979)); *United States v. Wight,* 839

F.2d 193, 196 (4th Cir.1987)).  The trial court has broad discretion whether to apply

collateral estoppel and must weigh the following factors:

(1) The party against whom the estoppel is asserted must have been a party or in privity with the party in the prior action.
(2) There must have been a final determination of the merits of the issues to be collaterally estopped.
(3) The issues decided in the prior action must have been necessary, material, and essential to the prior case.
(4) The party against whom the estoppel is to be applied must have had a full and fair opportunity to litigate the issues.
(5) The issues in the prior litigation must be identical to the issues sought to be estopped.

*Polk v. Montgomery Cnty., Md.,* 782 F.2d 1196, 1201-02 (4th Cir. 1986)(citing

*Parklane Hosiery v. Shore,* 439 U.S. at 331).

Pennymac raises new arguments they did not raise in the first filed action concerning their violation of MCALA but the elements of collateral estoppel are easily met with this issue.   Without Holdings' violation of MCALA the class representative and the putative class have no claims thus factors 1, 3 and 5 are not worthy of discussion.  In their Motion to Dismiss, in the previous action, Pennymac relied solely upon FDCPA cases to persuade this Court that pursuing foreclosure does not fall within MCALA's reach. JA 38-45   The district court rejected Pennymac's arguments and they acquiesced in their final dispositive motions that their business activities fall within scope of MCALA.   Pennymac had every incentive and did in fact rigorously contest that their business activities fall within MCALA's reach. *Parklane Hosiery,* 439 U.S. at 332–33 (finding the non-moving party to have had a full and fair opportunity to litigate where, in the previous

proceeding, he had "every incentive to litigate ... fully and vigorously" and had enjoyed all the "procedural opportunities" that would be available to him in the second proceeding).  Because a violation of MCALA is a prerequisite to a violation of FDCPA, this Court had to conclude that the Pennymac business activities fall within MCALA to reach the merits of whether their activities also meet the definition of a debt collector under FDCPA with respect to prior Plaintiff's loan.  Therefore, Pennymac is properly foreclosed from further litigating the issue of whether they violated MCALA.

## Pennymac cannot raise any reasonable arguments that would create immunity from MCALA.

Even if this Court refuses to apply collateral estoppel or the law of the case, Pennymac's new arguments as to why their business activities do not fall within MCALA are preposterous.  Pennymac on the one hand argues because of they offer loan modifications to establish long term relationships with borrowers they are not debt collectors as defined by FDCPA.  On the other hand, however, they argue their foreclosure activities does not fall within the definition of a collection agency under MCALA.  Pennymac relies upon the Maryland Limited Liability Company Act to exclude foreclosure activities from MCALA's reach.  The Code states, in pertinent part:

(a) In addition to any other activities which may not constitute doing business in this State, *for the purposes of this title*, the following activities of a foreign limited liability company do not constitute doing business in this State:… (5) Foreclosing mortgages and deeds of trust on property in this State; (6) As a result of default under a mortgage or deed of trust, acquiring title to property in this State by foreclosure, deed in lieu of foreclosure, or otherwise.

Md. Code Ann., Corps. & Ass'ns § 4A-1009 (Emphasis Added). The definitions of this title are not even remotely relevant to MCALA nor did the Maryland legislature intend otherwise. Moreover, all communications sent directly or indirectly through Pennymac Servicing as an attempt to collect money due on the defaulted mortgage debts fall within MCALA. [JA 169] FAC¶40; JA 198SAC¶33 The complaint cites to an exhibit on the record in the previous action that contains a sworn declaration from attorney Jesse Iliff that Ms. Oney received letters identical to the prior named plaintiff advising her that her loan was past due and her options to cure and a notice of intent to foreclose the default prior to Pennymac's acquiring a license. JA 169 FAC¶40; JA 198SAC¶33 Unless Pennymac is truly struggling to understand the applicable law, Pennymac's continues to argue authorities, including this Court's opinions, stand for a proposition which they know is flat out wrong. It is at least clear again, however, that they are needlessly prolonging this case.

**The complaint adequately pleads Pennymac is a debt collector.**

This case is a copycat of the first filed action thus Ms. Oney has sufficiently pled that Pennymac, while unlicensed, sent her numerous communications in an attempt to collect a debt that violate FDCPA.  [JA169] FAC ¶ 40; JA198-199 SAC¶37-38 An affidavit was submitted to the Court, in the first filed action, adequately summarizing the contents of the class files. JA218  The affidavit properly identified Ms. Oney as a member of the class and swore that Pennymac did in fact send the same communications, without a license, to Ms. Oney as they did the prior plaintiff, *i.e.* the notice of intent to foreclose, numerous letters advising that her loan is past due and conveying options to cure the default.  JA 218  The district court examined the contents of the notice of intent to foreclose, *which Pennymac attached to the record* in the first filed action.  The notice of intent to foreclose is a standard form letter where the contents are governed by Maryland Real Property Article §7-105.1(c). JA50-51;  *See Ademiluyi*, 929 F. Supp. 2d at 527.  Furthermore, the complaint adequately pleads Pennymac is a debt collector as defined under FDCPA §1692(a)(6).  Pennymac Services does not own the loan [JA 163]FAC¶26(a); [JA192] SAC ¶19(a) and is hired by Pennymac to [JA 163] FAC ¶26(c); [JA193] SAC¶19(c) to facilitate the receipt of payment on the defaulted debt through various means *i.e.* foreclosure; short sales, REO sales; direct payments from the borrower, etc.  Pennymac purchases the loans solely because of their default status. [JA 159;161] FAC¶2; ¶13    Pennymac seeks payment on the defaulted loans for the

benefit of its shareholders of a limited master partnership. [JA163;166] FAC¶26(j) ¶31; [JA 194;195] SAC ¶19(j);¶24. Therefore Pennymac is only unnecessarily delaying the action by raising these issues.

Nevertheless, Ms. Oney attempted to comply with Judge Motz's vague instructions that she plead "specific facts": 1)"that support the conclusory averment that PennyMac made collection efforts against her prior to being licensed" and 2)"status of the loan at the time it was purchased by Pennymac." Ms. Oney understood that the [JA 169] FAC ¶ 40 indicating that: Ms. Oney was identified to the Court as member of the class in the first filed class action; she received a notice of intent to foreclose from Pennymac prior to Pennymac acquiring a license; and [JA169;170] FAC ¶41-46 pertaining to Pennymac acquiring her loan while it was in default was insufficient. It appeared the court requested more specific facts concerning the content of the notice of intent to foreclose because Pennymac argued that complaint was lacking in the date the notice was sent and the contents of the notice. Ms. Oney added [JA 168] SAC¶¶ 37-38 detailing the date and contents of the notice of intent to foreclose.

Pennymac's argument that Ms. Oney differs from the prior plaintiff because foreclosure was commenced against prior plaintiff clearly demonstrated that they do not understand this Court's disposition of their prior Motion to Dismiss. JA 54 Foreclosure proceedings were not commenced against prior plaintiff while

Pennymac was not licensed. It was the notice of intent to foreclose and the various communications from Pennymac Services advising prior plaintiff that her loan was past due and her options to cure the default of her loan that constituted collection activity. Because Pennymac has substantial resources they can waste time coming forward with nonsensical defenses.

**There is no basis to strike any allegations in the complaint.**

Rule 12(f) can only be used to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" and it can be done "on motion made by a party either before responding to the pleading." Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)(citing 5A A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed.1990)).

There is nothing unusual or improper about filing a subsequent class action after the class representative of the first filed action failed to be an adequate plaintiff and it is entirely relevant to disclose these facts in the complaint. *See e.g. Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974)(statute of limitations is tolled to invite subsequent actions). It is extremely relevant how the first filed class action came about and why it failed because it determines the success of this action. [JA

162-163] FAC ¶ 17-26. The first action failed because the class representative's loan was not acquired in default however the new class representative's loan was acquired in the default. [JA 169 FAC] ¶44 The facts of the complaint are not immaterial or scandalous such that it justifies drastic remedy to strike a complaint. There is no harm to Ms. Oney to delete the facts and there is no harm to Pennymac to allow the facts. Pennymac is simply attempting to delay the action with their entire Rule 12 motion because they are in fear of inevitable consequences.

## ONEY'S INDIVIDUAL CLAIMS

## COUNT II ONEY'S INDIVIDUAL FDCPA CLAIM

### Collection Activity

Defendants argue that a letter that provides loss mitigation options is not collection activity but the Fourth Circuit states otherwise:

> To determine whether the filing of an assignment of judgment in a debt collection action triggers application of the FDCPA, we look first to the text of the statute…It is apparent that nothing in this language *requires* that a debt collector's misrepresentation be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay. *Cf. Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir.2010) (noting "that a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope" and that "a communication made specifically to induce the debtor to settle her debt will be *sufficient* to trigger the protections of the

FDCPA" (emphasis added)).... Rather, to be actionable under these provisions of the FDCPA, a debt collector needs only to have used a prohibited practice "*in connection with* the collection of any debt" or in an "*attempt* to collect any debt," a standard significantly broader than that employed by the district court.

*Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 123-24 (4th Cir. 2014).

Moreover, the district court has already specifically addressed that Pennymac Services' loss mitigation letters do constitute indirect collection activity of Pennymac.

> Defendants fare no better in connection with alleged indirect debt collection activities… PennyMac Holdings engaged in debt collection activity indirectly, through PennyMac Services and Citi as its servicing agents….For the reasons discussed earlier, I agree with plaintiff. A debt collector is not immunized from liability for collection activities merely because such actions are undertaken indirectly through an agent.….Furthermore, defendants acknowledge that PennyMac Services "performs the day-to-day activities of loan administration, processing of payments, providing customer service and workout and loan resolution support for troubled borrowers, implementing modification efforts, notifying borrowers of accounts payable, initiating and monitoring foreclosure efforts, and managing REO sales, among other activities." Memo at 5. This concession supports plaintiff's position that PennyMac Services played a significant role in facilitating collection efforts by PennyMac Holdings, as opposed to engaging in wholly separate conduct. Insofar as PennyMac Holdings violated the FDCPA through the conduct of PennyMac Services, as its agent, then plaintiff's Complaint states a valid claim. At the motion to dismiss stage, plaintiff's theory is plainly viable.

JA 53-54  Pennymac will continue to proffer the same arguments that reject and ignore the district court and this court's prior decisions.

**Pennymac and its Servicer are debt collectors.**

As argued *supra*, Pennymac is a debt collector and their servicer is also a debt collector. Pennymac Services does not own the loan[JA163] FAC¶26(a) and is hired by Pennymac to FAC [JA64]¶26(c) to facilitate the receipt of payment on the defaulted debt through various means *i.e.* foreclosure; short sales, REO sales; direct payments from the borrower, etc. Pennymac purchases the loans solely because of their default status. [JA159;161] FAC¶2; ¶13 Pennymac seeks payment on the defaulted loans for the benefit of its shareholders of a limited master partnership.[JA165;166] FAC¶26(j) ¶31. Pennymac provides Pennymac Services complete authority to modify loans [JA164] FAC¶ 26(d). Therefore, Pennymac Services, as an affiliate of Pennymac[JA160] FAC¶9, is a debt collector, under §1692(a)(6), because they acquire the servicing of the loans solely for their default status and collects payments on the loans for Pennymac who is in turn collecting for the benefit of shareholders of limited master partnership. In other words, Pennymac Services cannot step into the shoes of a creditor because it acquired servicing rights to the loan solely because of its default status to collect money to pay the debt. [JA164] FAC¶26(d).

**Pennymac and its servicer engaged in acts prohibited by FDCPA.**

In assessing whether a communication is false, misleading, or deceptive in violation of § 1692e is judged "from the vantage of the 'least sophisticated consumer". *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 394–95 (4th Cir.2014). False, deceptive, and misleading statements must be *material* to mislead and be actionable. *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126-27 (4th Cir. 2014); *Warren v. Sessoms & Rogers,* P.A., 676 F.3d 365, 374 (4th Cir.2012) ("[C]ourts have generally held that violations grounded in 'false representations' must rest on material misrepresentations"); *Lembach v. Bierman,* 528 Fed.Appx. 297, 303 (4th Cir.2013) (per curiam) ("[T]o plead a claim of false representation under the FDCPA, the party must show that the representations are material"). Materiality is further defined as "false or misleading statements that "may frustrate a consumer's ability to intelligently choose his or her response." Donohue, 592 F.3d at 1034; *Hahn,* 557 F.3d at 758 ("The statute is designed to provide information that helps consumers to choose intelligently ..."); *Powell,,* 782 F.3d at126-27.

Pennymac's argument that "[t]his allegation simply is not true" is insufficient to attack the FDCPA claim of the well-pleaded complaint. Unless it is proper for the Defendants attach to the complaint, their proprietary business records and confidential loan files of all consumers who apply for HAMP and the documents demonstrate that Pennymac does apply the HAMP NPV test to all applicants that

seek a HAMP loan modification [JA 172] FAC ¶55, they have no basis argue the statement, in the loss mitigation letter, as a whole is true. Moreover, Plaintiffs further plead that Defendants *omit* that they purchase the defaulted mortgages at significant discounts but the HAMP NPV test is designed to measure profitability of loan modifications for investors who purchase mortgages at fair market value. [JA172;180-181] FAC ¶55-57; 87. Because HAMP is a very attractive solution for struggling homeowners, [JA171] FAC¶52, omission of this information frustrates the consumer's ability to intelligently choose how to respond to the loss mitigation letter. Consumers will incur additional expenses to avoid foreclosure simply to apply for HAMP [JA170; 181-182] FAC ¶¶49; 91

Pleadings are not required to disclose every piece of evidence complainant has in her possession to prove her claims, and if the defendants come forward with evidence to disprove the allegations of the complaint, which they have not, plaintiff is entitled to discovery. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

## COUNT III MCPA

### The facts establish Defendant's misrepresentation and omissions violate MCPA

Similar to FDCPA, whether a misrepresentation or omission is 'false' or 'misleading' *and* it has 'the capacity, tendency, or effect of deceiving or misleading' consumers, under the MCPA, is judged from the point of view of a reasonable, but

unsophisticated consumer. *See Luskin's, Inc. v. Consumer Protection Div.,* 353 Md. 335, 356–57, 726 A.2d 702, 712 (1999). To determine the "capacity, tendency, or effect" of a statement or omission to deceive or mislead, courts consider whether "a significant number of unsophisticated consumers would find [the] information [at issue] important in determining a course of action." *Green v. H & R Block, Inc.,* 355 Md. 488, 524, 735 A.2d 1039, 1059 (1999).  In other words, the question is whether the information is likely to affect their choice." *Luskin's,* 353 Md. at 359, 726 A.2d at 713 (citation omitted). "In this respect, a statement 'cannot be viewed in a vacuum'; rather, it must be viewed in the context in which it was made, along with other representations to the consumer." *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 558-60 (D. Md. 2012)(citations omitted).

In *Sager*, Defendants moved for dismissal for Plaintiff's MCPA because the statements at issue were true.  Defendant allegedly misrepresented to Plaintiff that if she were evicted from her home, she would be unable to reapply for public housing assistance but if she voluntarily vacated her home, her eligibility for public housing would be unaffected.  The Defendant argued that according to federal regulations that an eviction can be basis to deny a reapplication of public housing assistance. This Court found, however, that while the Defendants assertion that an eviction alone is basis to deny a reapplication is true, it is not are true that if a recipient voluntarily vacates, her eligibility will be unaffected.  According to federal

regulations, when reapplying for public housing, applicants are judged on the basis of many factors thus there is no guarantee that voluntarily vacating public housing will guarantee a renewal of assistance. Therefore the court could not conclude that the Defendants statements as a whole were true and did not violate the MCPA. *Id* at 558-60.

Again, Pennymac and its servicer are inappropriately fighting the facts stating in pertinent part, "[t]he Court need look no further than the *numerous* proprietary and HAMP modifications identified in the Amended complaint." Here, again the term "numerous" contradicts the facts alleged in the complaint. Although the exact number of HAMP modifications are unknown, the numbers alleged to the Court of less than 20% of loans who received loss mitigation offers is not numerous. Furthermore, their numbers only pertain to the putative class during the putative class period. Ms.Oney does not allege that they don't offer HAMP modifications. Ms. Oney alleges that they discriminate in their offers of HAMP modifications and fail to disclose this information to homeowners. [JA173-174] FAC¶ 57-58. The proper test as to whether the statement or omission has the capacity to mislead or deceive consumers is whether "a significant number of unsophisticated consumers would find [the] information [at issue] important in determining a course of action." *Green,* 355 Md. 488 at 524. Ms. Oney did not receive a HAMP modification but rather a proprietary loan modification that was not helpful to her financial

condition[JA 170] FAC¶48.   Ms. Oney defaulted on that proprietary loan modification and subsequently hired a loan modification company to assist with acquiring HAMP from the defendant and was denied assistance. [JA170;176;182] FAC¶¶49;63;92

### Ms. Oney has adequately plead damages under MCPA

To prevail on Maryland Consumer Protection Act ("MCPA"), Md.Code Ann., Com. Law §§ 13–101 *et seq.*, Ms. Oney must show that she reasonably relied to their detriment on some misrepresentation made by Pennymac and Pennymac Servicing. *Green v. Wells Fargo Bank, N.A*, 927 F. Supp. 2d 244, 253-55 (D. Md. 2013) *aff'd*, 582 F. App'x 246 (4th Cir. 2014)(citing  *Goss,* 917 F.Supp.2d at 450, 2013 WL 105326, at *3 ("To state a claim under the MCPA, 'the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation' ") (quoting *Lloyd v. General Motors Corp.,* 397 Md. 108, 143, 916 A.2d 257 (2007).  For alleged misconduct from a mortgagee, in *Piotrowski v. Wells Fargo Bank, N.A.,* No. CIV.A. DKC 11-3758, 2013 WL 247549, at *12 (D. Md. Jan. 22, 2013), the Court found that the plaintiff's MCPA claim sufficiently pleaded damages as a result of Wells Fargo's conduct: "damage to his credit; lost time from work and legal fees to resolve his dispute without the need for litigation; and emotional distress in the form of anxiety and insomnia. *See also Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d

45

452, 468 (D. Md. 2013) (plaintiff sufficiently pled actual injury by alleging, *inter alia,* that he suffered emotional and physical distress; attorney fees; and damage to his credit); *Sager v. Hous. Comm'n of Anne Arundel Cnty.,* 855 F. Supp. 2d 524, 548-49 (D. Md. 2012)("plaintiffs request for damages for "emotional distress and mental anguish" is permissible under…CPA, and is not subject to dismissal as a matter of law.")

Ms. Oney has adequately plead reliance on Pennymac and Pennyamc Services' omissions and misrepresentations because she suffered economic loss [JA 170;176;182] FAC¶49;63;92 and non-economic loss [JA176; 182] FAC¶63;93 as a result of Pennymac and Pennyamc Services' misrepresentations or omissions. Had the Ms. Oney known about Pennymac and Pennyamc Services'true standard for determining HAMP eligibility, she could have intelligently chose not to waste her money hiring a company to assist with acquiring a HAMP modification. [JA182] ¶92. Likewise, Ms. Oney could have avoided the emotional distress of applying for and being denied a HAMP modification. [JA176; 182] ¶63,93.

## PREEMPTIVE STRIKE AGAINST CLASS CERTIFICATION

Judge Motz abused his discretion in denying class certification through vaguely and briefly stating in a footnote that counsel failed to follow the court's instructions by pleading the circumstances, which prevented counsel of record from

acting as class counsel in the first filed action no longer exist. In considering

appointment of class counsel, Courts consider the factors enumerated under Rule 23

g, which states in pertinent part,

> **(g)(1)Appointing Class Counsel.** Unless a statute provides otherwise,
> a court that certifies a class must appoint class counsel. In appointing
> class counsel, the court: **(A)** must consider: **(i)** the work counsel has
> done in identifying or investigating potential claims in the action; **(ii)**
> counsel's experience in handling class actions, other complex litigation,
> and the types of claims asserted in the action; **(iii)** counsel's knowledge
> of the applicable law; and **(iv)** the resources that counsel will commit
> to representing the class; **(B)** may consider any other matter pertinent
> to counsel's ability to fairly and adequately represent the interests of the
> class…**(g)(2)Standard for Appointing Class Counsel.** When one
> applicant seeks appointment as class counsel, the court may appoint that
> applicant only if the applicant is adequate under Rule 23(g)(1) and
> (4)….**(g)(4) Duty of Class Counsel.** Class counsel must fairly and
> adequately represent the interests of the class.

Because, on February 10, 2015, the district court held in the first filed action counsel

of record was inadequate to represent the class "at this time" and clearly articulated

reasoning, counsel will address in turn why all such obstacles are no longer present.

JA 108-109

The district court stated, counsel of record presented a "mishmash of requests

without properly identifying the governing procedural standards, and without

making any relevant supporting arguments under those governing standards" JA109.

Relying on a treatise to interpret the scope of Rule 23(g), the district court incorrectly

that counsel of record misstated the application of the rule. *Id.* Indeed, the scope and

purpose of Rule 23(g) is not clear on its face. As counsel of record pointed out in her letter in response to the district court's order, the Advisory Committee Notes on Rule 23(g) explain that the rule is not limited to appointment of counsel solely when there is rivalry between law firms seeking appointment of class counsel. JA114 Rule 23(g) provides authority to appoint counsel when there is uncertainty in whether there is counsel to represent the class because only counsel who filed the action can seek to act on behalf of the class in pre certification matters. "Only if the statutory language is ambiguous is it appropriate to look to legislative history." JA45 (citing *Johnson v. Zimmer,* 686 F.3d 224, 235 (4th Cir.2012)). As prior counsel also pointed out to the court, it is a rare occurrence and there is no other relevant authority on point for the Court to call upon attorneys who are not prosecuting the matter to act on behalf the class. The district court made a subtle acknowledgement that Rule 23(g) is not limited to rivalry but any uncertainty as well. JA116

Understandably the district court was confused as to why the prior plaintiff first wanted to seek additional legal advice and hire a different attorney without a familial relationship but then was unable to do so. Counsel of record followed her client's instructions on how she wished to proceed in the case and attempted to appease all parties including prior counsel. Unfortunately, there was no other means to avoid the confusing request to the Court because prior plaintiff and prior counsel were both inconsistent in their decisions to continue to with the case. Counsel of

record brought to the Court's attention the conflict of interest with the familial relationship and all that occurred including plaintiff's attempt to rehire former counsel prior to counsel of record seeking appointment as class counsel. This type of conflict is not unusual. Class action suits are rife with conflict between class counsel and class members because counsel sometimes have more to gain from the suit than the client.

There is no longer a conflict of interest between plaintiff's counsel and the class members or any potential threat to counsel's ability to fight rigorously for the class. This Court excluded prior plaintiff from the class because there was a unique defense available to Pennymac that the loan was not in default when they acquired it. Among all potential class members, it was only prior plaintiff, who had a familial relationship with prior counsel. Indeed, the "ability to protect the interest of the class depends in part on the quality of counsel." *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975). As the Court can see, counsel of record is an attorney who has fought rigorously on behalf of the class members. When prior Plaintiff was excluded from the class, counsel continued to rigorously prosecute this matter with a different plaintiff, so class members can receive all that they are entitled to as a result of years of litigation. This is a case that can provide great assistance to class members.

Counsel of record has been working on multiple consumer protection class action suits including the instant case for approximately one year, which was not the

circumstances when she initially entered an appearance on the first filed action. JA 244-245. This Court, however, acknowledged that prior appointments as class counsel or experience in prosecuting class action suits are not necessary. JA 108-109; *See also Lewis v. Ford Motor Co.,* 263 F.R.D. 252, 266 (W.D. Pa. 2009); *Stitt v. San Francisco Mun. Transp. Agency,* No. 12-CV-3704 YGR, 2014 WL 1760623, at *7 (N.D. Cal. May 2, 2014); *Crissen v. Gupta*, No. 2:12-CV-00355-JMS, 2014 WL 4129586, at *10 (S.D. Ind. Aug. 19, 2014). It is imperative this Court carefully address counsel's ability to represent the class because counsel would like to pursue class action litigation and now has two other class action suits pending, where she will seek appointment as class counsel and more importantly, the class members have *waited too long* for relief.

Finally, the district court had concern about the resources of counsel of record, as a "solo practitioner" would call upon to prosecute the action. JA 110 The Court cited to the Fourth Circuit, in *Skipper,* 68 F. App'x at 393, affirming a District Court's refusal to appoint counsel as class counsel due to inadequate financial resources and clear misstatements of law. In *Skipper*, counsel of record was having difficulty paying an expert necessary to prosecute the action. Experts are not necessary to prosecute the instant case. The remaining cost to bring closure to the class claims will arise from sending notice to class members. In the instant case, class certification and summary judgment are sought simultaneously thus the cost

the cost of notice is not unnecessarily imposed on either party. Even if class certification occurred prior finding liability, defendants are in a better position to identify and send notice to class members because they regularly mail notices to class members and the cost should fall upon them. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 357-358 (1978). The cost of sending notice to a maximum of 180 class members will likely not exceed $250. Counsel has administrative staff at her disposal that can assist with sending notice to the extent that it is necessary to send notice prior to Defendant paying damages to a Judgment or Settlement Fund. Any distribution of claims will be carried out through a reputable claims administrator, who can also send notice, if necessary. Niether Pennymac nor the court could objectively identify any potential financial issues or other resources necessary and lacking to vigorously prosecute this case. More importantly, the district court incorrectly presumed counsel did not have the resources to prosecute this case because she is a solo attorney. As counsel argued in the previous action, the class size is small and the issues are not complicated thus the cost of prosecuting the case is very small.

Counsel initiated the investigation into Pennymac's business practices and determined that they were conducting business as debt collectors and together with former counsel of record further investigated and identified the potential claims in this action. JA 244-245

Judge Motz clearly abused his discretion in finding counsel inadequate. JA 247  Judge Motz briefly states in a footnote that counsel of record did not follow the court's instructions but does not address counsel's adequacy or how she failed to follow the court's instructions.  Counsel sought clarification of his instructions because neither party understood his instructions but that request was denied. JA246 Counsel understood that Judge Motz would approve the appointment to represent the class if she plead the change in circumstances since Judge Hollander's ruling in the first filed action instead of raising those arguments in the Motion to Certify Class and Appointment of Class Counsel.  It's entirely possible Judge Hollander took no issue with counsel but she was too overwhelmed to address it.  Pennymac filed the same motion to dismiss three times, which also precisely mirrored their motion to dismiss and motion for summary judgment in the first filed action primarily arguing they are not debt collectors as defined by FDCPA.[4]  For the reasons Judge Motz stated for the dismissal, there was no amendment that could have been made that would have avoided the dismissal.

---

[4] On December 9, 2015, this Court heard the oral arguments of *Henson v Santander* 15-1187, where Judge Niemeyer specifically stated that at least all courts agrees that if your business is primarily focused on purchasing defaulted debts to collect, the entity is a debt collector.  Pennymac yet still argues, relying on cases where the entities at issue are banks and lenders, they are not debt collectors as defined by FDCPA because they offer loan modifications and purchased the debts.  This Court understood that the *Henson* opinion must be carefully crafted to address a convoluted statute and confusing case law.

Because there are no other issues standing in the way of class certification, Pennymac will argue counsel is incompetent to represent the class because she failed on a legal theory. Prior counsel failed on his legal theories and Pennymac did not challenge his appointment. According to Pennymac's bizarre legal standard for adequacy of class counsel, every Judge and lawyer, including themselves, would be deemed incompetent. A disagreement between a Judge and lawyer concerning interpretation and application of the law does not make a lawyer unfit to practice law and represent a class. It is simply practicing law. If an attorney, however, is advancing legal theories they are fully aware or reasonably should be fully aware is absolutely incorrect, then there is a competency issue. Notably in the first filed action the Court acknowledged that it was incorrect in its assessment that counsel misstated the law. JA116 Ms. Oney's counsel has rigorously prosecuted this case with professionalism and knowledge of the law and there is no evidence to the contrary.

**RELIEF REQUESTED**

Ms. Oney request this Court deny the 12(b)(6)Motion to Dismiss, of Pmac in its entirety and allow her to proceed with her claims.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 11,411 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font and Times New Roman.

_s/April Ademiluyi_____
April Ademiluyi, Esq.(Bar No 29141)
The Law Office of April T. Ademiliuyi
10411 Motor City Dr Ste 750
Bethesda, MD 20817
Ph: 443-393-3984
Fax: 443-393-0416

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on February 8, 2016 via cmecf to all attorneys of record.

                    _s/April Ademiluyi_____
April Ademiluyi, Esq.(Bar No 29141)
The Law Office of April T. Ademiliuyi
10411 Motor City Dr Ste 750
Bethesda, MD 20817
Ph: 443-393-3984
Fax: 443-393-0416

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  15-2585          Caption:  Oney v. Pennymac Mortgage Investment Trust Holdings I, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Carol Jean Oney
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                         ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: s/April T. Ademiluyi _____    Date: _____ 1/1/2016 _____

Counsel for: Appellant _____

# CERTIFICATE OF SERVICE
**************************

I certify that on _____ 1/1/2016 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ed Chang
Blank Rome
One Logan Square 130 N. 18 St.
Philadelphia, PA 19103

s/April T. Ademiluyi _____          _____ 1/1/2016 _____
         (signature)                                          (date)